**Rita D. CARLTON, Plaintiff–Appellant,**

v.

**William J. HENDERSON,
Defendant–Appellee.**

No. 02–1129.

United States Court of Appeals,
Sixth Circuit.

May 12, 2003.

Before: MOORE and ROGERS, Circuit

Judges; and KATZ,* District Judge.

## OPINION

MOORE, Circuit Judge.

The plaintiff, Rita Carlton, appeals the jury verdict against her in her suit against the defendant Postmaster General. After being accepted for a position with the defendant, Carlton was required to attend a physical screening demonstrating that she could adequately perform the job. After the screening revealed some potential concerns, Carlton was required to supply more medical information, and -- according to the defendants -- to come in for a physical examination. Although Carlton did supply more medical information, she did not come in for a physical examination. Her initial job offer was not held open for her. Carlton sued, claiming that she was discriminated against on the basis of her physical handicap in violation of the Rehabilitation Act, 29 U.S.C. § 794(a). After losing a jury verdict, Carlton filed a motion for a judgment notwithstanding the verdict, and alternatively, for a new trial. The district court denied these motions. Based on the facts of the case, and for the reasons set forth below, we AFFIRM the district court's judgment.

## I. BACKGROUND

After having several temporary stints with the Post Office, Rita Carlton took the United States Postal exam with the hopes of getting a career position there. She passed the exam in March of 1998. After a successful interview with the Taylor, Michigan office, Carlton was advised on October 9, 1998 that she needed only a physical and a urinalysis test before beginning training.

Pursuant to the defendant's instructions, Carlton reported to the medical unit for a physical screening. Carlton filled out a routine questionnaire. Three of her answers were flagged as being potentially problematic, including the fact that she had previously had an MRI scan, a work-related injury, and a herniated disk. The nurse, Ceofas Anasco, stopped the examination and gave Carlton a medical-assessment-hold form, which stated that Carlton needed to submit additional medical documentation within fourteen days. The form stated that Carlton would then be notified "when the medical assessment has been completed *or* closed due to insufficient information." J.A. at 129.

Carlton went that same day to her doctor, Dr. Chris Shaffrey, to have him fill out that paperwork. Shaffrey believed that Carlton had no physical limitations. He promptly filled out the forms while Carlton waited, and Carlton brought them back to what was supposed to be her orientation that afternoon. Carlton was told, however, that she could not proceed with the orientation until she had a physical. Carlton went back to the medical unit with the form from Shaffrey. Carlton was told by the medical unit that Dr. Nisha Parulekar needed to look at this information and that Carlton could contact her after 7:30 p.m. Carlton called Parulekar that night.

At this point, the parties' accounts begin to differ. According to Parulekar, Parulekar told Carlton in the phone call that Carlton needed to make an appointment for a physical on or before October 24th. Parulekar also testified that she instructed a nurse to call Carlton to remind her to come in before the 24th for a physical exam. Carlton, however, claims that when

---

* The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

she asked Parulekar when the physical would take place, Parulekar implied that a physical was unnecessary because it was clear that Carlton would be unable to perform her job duties. Carlton testified that when she told Parulekar that she had worked with the Post Office in the past, Parulekar laughed and did not believe her. Despite being led to believe that a physical was unnecessary, Carlton argues that she still called Parulekar's office several times trying to set up a time for a physical and was rebuffed.[1]

The parties agree that Carlton did not show up on or before the 24th. There was undisputed testimony from Carolyn Robinson, a postal personnel specialist, that the Post Office removed from the hiring register candidates who did not show up for a physical appointment. On October 26, Parulekar wrote a medical assessment determination based on the information available to her. This determination went to the Postmaster's personnel office. It stated that Carlton was a "moderate risk" and would not be able to lift over 35 pounds. J.A. at 133. Since a distribution clerk is required to be able to lift 70 pounds, this meant that Carlton was barred from the job. On October 30, Carlton received a rejection letter from Terrence Fedea, which stated that Carlton could make a request for reconsideration of this determination within 15 days, and that she could include additional medical information with that petition.

Carlton then wrote to Fedea seeking reconsideration and supplying more information. On November 18, 1998, John Plona, another administrator, wrote to Dr. Parulekar and asked for her decision on Carlton. Carlton had two physical examinations, one with Parulekar and one with Dr. Harvey Gass. Both Gass and Parulekar eventually reported Carlton as medically fit. Carlton was then placed on the postal hiring register for future vacant positions. No positions were available at that time.

Carlton complained to an Equal Employment Opportunity (EEO) counselor around November 9, 1998, while her file was being reconsidered. On or about January 29, 1999, she received a notice of right to file a complaint. She filed a complaint, and this case proceeded to trial on October 3, 2001. The case was submitted to the jury, who found that Carlton was perceived to be disabled but that the Postal Service did not intentionally discriminate against her for that reason. On October 10, 2001, the district court granted judgment for the defendant as a result of the jury verdict. On December 12, 2001, the district court denied Carlton's motions for judgment notwithstanding the verdict and for a new trial. Carlton appealed the denial of those motions to this court.

## II. ANALYSIS

### A. Standards of Review

We review de novo a motion for a judgment as a matter of law.[2] *Pouillon v. City of Owosso*, 206 F.3d 711, 719 (6th Cir. 2000). When considering such a motion,

---

1. Carlton also attempted to prove to Parulekar that she had worked previously at a Post Office by obtaining her official postal file from the Post Offices where she had worked. Apparently, the official file was never delivered to Carlton.

2. Although the parties and the district court referred to this motion as a motion for judgment notwithstanding the verdict, under the current version of Federal Rule of Civil Procedure 50 it is now called a motion for "judgment as a matter of law." As the Advisory Committee has pointed out, this error is "merely formal" and has no legal consequence. Fed.R.Civ.P. 50 advisory committee's note (1991).

"[w]e do not weigh the evidence, evaluate the credibility of the witnesses, or substitute our judgment for that of the jury. Instead, we must view the evidence in the light most favorable to the party against whom the motion is made, and give that party the benefit of all reasonable inferences." *Wehr v. Ryan's Family Steak Houses, Inc.*, 49 F.3d 1150, 1152 (6th Cir. 1995). We will reverse the denial of the motion "only if reasonable minds could not come to a conclusion other than one in favor of the movant." *Id.*

We review a district court's decision to deny a new trial for an abuse of discretion. *Argentine v. United Steelworkers of Am.*, 287 F.3d 476, 484 (6th Cir.2002). In considering this claim based on the weight of the evidence, we "compare the opposing proofs, weigh the evidence, and set aside the verdict only if it … is against the clear weight of the evidence." *United States v. L.E. Cooke Co.*, 991 F.2d 336, 343 (6th Cir.1993).

## B. The Merit of Carlton's Claim

Carlton only raises one claim which she argues entitles her either to a judgment as a matter of law or to a new trial. Carlton's allegation is that no reasonable juror could have come to any other conclusion than that Carlton was intentionally discriminated against by the Post Office. As we find that such a conclusion was only one of several justifiable conclusions that a reasonable jury could have reached, we affirm the district court's judgment.

Carlton argues that, given that the jury's finding that the Post Office perceived her as disabled, the jury incontrovertibly should have found that the Postmaster intentionally discriminated against her – because all of the evidence, according to Carlton, supports the conclusion that this perceived disability was the basis for her not being hired. Carlton points to

two pieces of evidence. Carlton's first piece of evidence is the medical assessment determination, which states that she was a moderate risk and would not be able to lift over 35 pounds. Carlton also points to the defendant's response to an interrogatory, which states that Dr. Parulekar was the one who made the decision that Carlton was medically unsuitable for the job. These documents, Carlton argues, support her claim that the Post Office did not hire her because of her perceived disability, not because she failed to have a timely physical.

Carlton, however, ignores the fact that the defendants put on significant contrary evidence suggesting that the Post Office failed to hire Carlton because she failed to come to the physical. Parulekar testified that she told Carlton that a physical must be performed by October 24th. Parulekar also testified that she instructed a nurse to call Carlton to remind her that a physical must be performed before that date. There was also uncontroverted testimony from Carolyn Robinson that those whose do not show up for physicals have their names taken off the hiring register.

In light of this evidence, we believe that a reasonable jury could have concluded that the Post Office failed to hire Carlton because she did not appear for a physical examination within the allotted time, rather than because the Post Office perceived her as having a disability. We therefore reject Carlton's motions for judgment as a matter of law and for a new trial. *See Pouillon*, 206 F.3d at 719 ("Judgment as a matter of law is appropriate only when there is a complete absence of fact to support the verdict, so that no reasonable juror could have found for the nonmoving party.") (quotation omitted); *L.E. Cooke Co.*, 991 F.2d at 343 ("The motion [for a new trial] should be denied if the verdict is

one which could reasonably have been reached.").

### III.   CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.